**Clint W. HARRIS, et al., Plaintiffs,**

v.

**CITY OF ZION, et al., Defendants.**

**Theodore M. KUHN, et al., Plaintiffs,**

v.

**CITY OF ROLLING MEADOWS, et al., Defendants.**

**Nos. 87 C 7204, 87 C 7205.**

United States District Court, N.D. Illinois, E.D.

Feb. 9, 1990.

Richard M. Gutman, Chicago, Ill., for plaintiffs.

Roderick A. Palmore, Jane A. Zimmerman, Paul S. Chervin, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Berle L. Schwartz, Highland Park, Ill., Adeline Jay Geo–Karis, Zion, for City of Zion, et al.

Donald Rose, Cathleen Ross, Rose & Ross, Ltd., Rolling Meadows, Ill., for City of Rolling Meadows, et al.

MEMORANDUM OPINION
AND ORDER

ZAGEL, District Judge.

### I.  INTRODUCTION

The plaintiffs in *Kuhn v. City of Rolling Meadows* and the plaintiffs in *Harris v.*

*City of Zion* bring actions under 42 U.S.C. sec. 1983, seeking declaratory and injunctive relief. The plaintiffs in *Kuhn* have moved for summary judgment pursuant to Fed.R.Civ.P. 56. The plaintiffs and the defendants in *Harris* have both moved for summary judgment under Fed.R.Civ.P. 56. A summary judgment motion under Rule 56 imposes on the movant the burden of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because there are no material factual issues in dispute in either case, summary judgment is appropriate for the resolution of this litigation.

The two cases before the Court present the same legal issue: the constitutionality of a religious symbol in a municipality's corporate seal. Our judgment is this: In *Kuhn v. City of Rolling Meadows* we deny the plaintiffs' motion. We hold that the official seal of the City of Rolling Meadows does not violate the First Amendment of the United States Constitution. However, because the defendant in *Kuhn* has not moved for summary judgment, we take no further step than to deny the plaintiffs' motion for summary judgment. In *Harris v. City of Zion* we deny the defendants' motion and grant the plaintiffs' motion. We hold that the seal, emblem, and logo of the City of Zion violate the First Amendment of the United States Constitution, and therefore enjoin the City of Zion from their continued use.

## II. FACTS

### A. The City of Rolling Meadows

The plaintiffs are Theodore M. Kuhn, a resident of the City of Rolling Meadows, and the Society of Separationists, Inc., a Maryland corporation. The defendants are the City of Rolling Meadows, Cook County, Illinois ("Rolling Meadows"), the Mayor of Rolling Meadows, and the City Council of Rolling Meadows. The plaintiffs sue the individual members of the City Council, which includes the Mayor, in their official capacities.

Rolling Meadows' corporate seal (Exhibit A) appears below:

1244

Exhibit A

This seal appears on all city-owned vehicles, including all police cars and some fire trucks, on the city vehicle stickers of all vehicles operated by city residents, on the shoulder patch of the city police officers, on the city letterhead, and in the City Council chambers.

Rolling Meadows adopted the seal in 1960, the year Rolling Meadows celebrated its fifth anniversary. An eighth grader, Cheryl Knudsen, designed the seal in response to a school art assignment. In an affidavit, Knudsen described the inspiration for her design: "I drew what I saw, [and] had no purpose other than to complete an assignment." An independent committee selected, and the City Council approved the adoption of, Knudsen's design.

### B. The City of Zion

The plaintiffs are Clint W. Harris, a resident of the City of Zion, and the Society of Separationists, Inc. The defendants are the City of Zion, Lake County, Illinois ("Zion"), the Mayor of Zion, and the Zion City Council. The plaintiffs sue the individual members of the City Council, which includes the Mayor, in their official capacities.

Zion's corporate seal (Exhibit B), which contains the Zion emblem, and Zion's logo (Exhibit C) appear below:

Exhibit B

1246

## Exhibit C

The emblem is found in the seal and is surrounded by the phrases "CORPORATE SEAL" and "CITY OF ZION, ILLINOIS."

The seal or logo appears on the city flag, on the city letterhead, in the City Council chambers, on the city vehicle stickers of all vehicles operated by city residents, on the shoulder patch of the city police officers and fire fighters, on the city's water tower located near Ninth Street in Zion, on all city street signs, and on all city-owned vehicles.

At the first meeting of the Zion City Council on May 6, 1902, the Reverend John Alexander Dowie, "the Overseer of the Christian Catholic Church in Zion," presented the City Council with a proposed City of Zion corporate seal. The Christian Catholic Church of Zion was and is an Evangelical Protestant church founded by Dowie. The

City of Zion was also founded by Dowie "for the purpose of the extension of the Kingdom of God upon earth ... where God shall rule in every department of family, industry, commercial, educational, ecclesiastical and political life." The City Council's Minutes are clear, in the words of Dowie, on the purpose of the seal:

In presenting to you this seal, I ask you to accept it and to use it reverently. Let no hand ever hold this lever and put this seal to anything that God does not approve.

Let the officer who uses this seal feel, as he pulls this lever and makes this impression, "God Reigns," that the document must be such a one as God approves.

May every commission of every officer which bears the seal of this city be

looked upon as solemn thing; that it is a commission to bear such authority, however small or great, as God's minister—God's minister in law—God's minister in the Eternal Covenant in a measure.

City of Zion, Minutes of First Meeting of City Council, May 6, 1902. Dowie later makes clear the meaning of each symbol in the emblem:

> Look at that Dove which is the emblem of the Holy Spirit, bearing the Message of Peace and Love over the seas. The Cross represents everything to us in Redemption, Salvation, Healing, Cleaning and Keeping Power.
>
> The Sword is the Sword of the Spirit, which is the Word of God.
>
> The Crown is the Crown of Glory, the Crown of Joy, the Crown of Righteousness, the Crown of Rejoicing.[1]

*Id.* The City Council, all of whose members belonged to the Christian Catholic Church in Zion and the Theocratic Party, unanimously adopted the ordinance establishing the proposed seal as the official corporate seal of the City of Zion. In 1978 the city developed the logo, modelled on the city's seal, to affix to the Zion water tower.

## III. DISCUSSION

### A. Introduction

As we enter this Establishment Clause thicket, *see Doe v. Small,* 726 F.Supp. 713 (N.D.Ill.1989) (Shadur, J.), we look first to the Supreme Court's most recent guidance in *County of Allegheny v. American Civil Liberties Union,* —— U.S. ——, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). As Judge Shadur notes, *County of Allegheny* reconfirmed the three part test in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), on which we rely to determine if the challenged government conduct is permissible. For a court to find a statute or government practice constitutional:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, ...;

finally, the statute must not foster "an excessive government entanglement with religion."

*Id.* 91 S.Ct. at 2111. The statute or practice must pass each of these three "tests" to be found constitutional.

### B. Rolling Meadows

■ The plaintiffs' concede that the Rolling Meadows seal does not violate the "purpose" and "entanglement" prongs of the *Lemon* test. We bear in mind that if any one of the three prongs is violated the seal is unconstitutional. It therefore behooves the defendant to agree that the seal does not violate the "purpose" and "entanglement" prongs. Yet, the defendant oddly insists we examine these "two crucial criteria."

We agree with the plaintiff that the seal does not violate the "purpose" and "entanglement" tests. Although the seal does not have a preamble revealing the purpose for its adoption, the defendant submitted affidavits indicating the city adopted the seal for the purpose of celebrating the community's fifth anniversary. The designer of the seal was an eighth grader who swears, "I drew what I saw, [and] had no purpose other than to complete an assignment." An independent committee chose the seal as the winning entry. We conclude that the legislative purpose in adopting the seal was secular.

Nothing in the record suggests, and neither party argues, that the seal involves excessive entanglement with government.

The core issue is whether the seal's principal or primary effect is one that advances religion. *Lemon,* 91 S.Ct. at 2111. As the Supreme Court has noted, whether the verb we choose is "advance," "endorse," "favor," "prefer," or "promote," the principle is the same: "The Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to a religion relevant in any way to a person's standing in the political community.'" *County of Allegheny,* 109 S.Ct. at 3101 (*quoting Lynch v. Donnelly,*

---

**1.** The sword was later changed to a scepter.

465 U.S. 668, 104 S.Ct. 1355, 1366, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)).

The primary effect of the seal turns largely on the overall, "unique physical" context, *American Jewish Congress v. City of Chicago,* 827 F.2d 120, 128 (7th Cir.1987), in which the challenged religious symbol here, the cross [2], appears. The Supreme Court has stated that "the government's use of religious symbolism is unconstitutional if it has the effect of endorsing religious beliefs, and the effect of the government's use of religious symbolism depends upon its context." *County of Allegheny,* 109 S.Ct. at 3103. Based upon the context in which the cross appears in the Rolling Meadows seal, we find that the primary effect of the seal does not advance religion.

The challenged content of the seal, the cross, is a symbol of Christianity. *American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265, 271 (1986). We are particularly sensitive that this symbol is "not only religious but also sectarian." *Id.*[3] This is of concern to us because "the more sectarian the display, the closer it is to the original targets of the [establishment] clause, so the more strictly is the clause applied." *Id.* We are also mindful that the municipal corporate seal in which the cross appears is not unlike City Hall, which is a "symbol of government power" and "marked with the stamp of government approval." *City of Chicago,* 827 F.2d at 128. We proceed with both of these concerns in mind.

In the context of the Rolling Meadows seal, the cross represents one aspect of the origin of the Rolling Meadows community. Each of the four pictures on the seal, in-

cluding the cross, water tower, leaf, and school[4], suggests a different feature of the Rolling Meadows community as found on its fifth anniversary. Notably, the image that includes the cross appears as a scene: Although the cross obviously appears in a style that is more abstract than the way it would register on a photographic plate, we do not find that the image's level of abstractness renders the image, in the context of the other four images, as strong a symbol of Christianity (or religion) as would a lone or prominent cross. Although this distinction may appear to emanate from the offices of an interior decorator, *see City of Chicago,* 827 F.2d at 129 (Easterbrook, J., dissent), we find it relevant. While there is no doubt that a Latin cross is itself a symbol of Christianity, we conclude that the relation of the challenged image before us, in the context we receive it, to the referent at issue—religion, or more specifically, Christianity—is weak. We refrain from emphasizing this point too strongly because to the average observer of the Rolling Meadows seal there does appear a cross. However, we must take the image as we see it in, not out of, context. *See* R. Arnheim, Visual Thinking 135–52 (1969).

The plaintiffs argue that the cross on the Rolling Meadows corporate seal is "large," "conspicuous," "prominent," and "massive." We do not agree. We hesitate to use adjectives to muddle the clarity of Exhibit A. However, as we noted, the cross is only one of several pictures that comprise the display on the seal. We find that the remaining pictures sufficiently "neutralize" the seal to avoid any religious message a lone or a prominent cross, *City of St. Charles,* 794 F.2d at 267 (cross in dis-

---

**2.** We do not quibble with the plaintiffs over whether the challenged symbol is in fact a cross. The defendants counter with the experience of Robert Sherman, a Society of Separationists member and director of the Northern Illinois Chapter of Atheists, who abandoned his challenge to the Rolling Meadows seal. After researching the challenged symbol, Sherman concluded that the symbol was in fact a utility pole in an industrial setting. We conclude, for the purpose of the plaintiffs' summary judgment motion, that the symbol is a cross.

**3.** The seal varies slightly among its reproductions. The cross, which is obviously of most interest to us, is not uniform in all the seals. It is fair to say, however, that the cross appears as a Latin cross in each seal.

**4.** The plaintiffs allege the lower quadrant of the seal contains a single-family residence. The defendants claim the building is in fact a school. This difference is not material to the decision of this court.

play found "highly prominent"), would convey.

Were it not for the other symbols that surround the cross, the fact that the cross occupies a relatively small portion of the seal's space, and to a lesser extent, the fact that the cross appears in scene form, a nonadherent might consider the seal an endorsement of religion. This case would thus be indistinguishable from the cases in which the prominent display of a cross has been held unconstitutional. However, the seal before us cannot be fairly characterized as prominently displaying the cross. The question, as we understand it, is not whether a cross may appear in a municipality's seal; but rather, whether the context in which the cross appears has the effect of endorsing religion. There certainly may exist municipal seals that contain crosses and that convey messages endorsing religion.[5] This, however, is not one of those seals. There would be no meaningful difference between holding otherwise and holding that no municipal seal may contain a cross.

## C. Zion

▆ The plaintiffs challenge Zion's seal, emblem, and logo.[6] Zion's corporate seal consists of the Zion emblem surrounded by the phrases "CORPORATE SEAL" and "CITY OF ZION, ILLINOIS." Zion's logo contains the same three symbols—a cross, a dove, and a crown with a scepter—found in the emblem, but does not appear in the form of a shield and does not contain a ribbon inscribed with the words "GOD REIGNS."

The defendants argue that the corporate seal, emblem, and logo have three secular purposes:

First, the seal is required by state law to authenticate municipal records. Second, the seal, emblem and logo facilitate the identification of property with the municipality and identify the community itself. Finally, all three symbols commemorate

the rich and unique historical heritage of Zion as an experiment in establishing a twentieth century utopian community.

Defendants' Motion for Summary Judgment at 2. The plaintiffs challenge the content of the seal (the emblem), not the validity of Zion's having a municipal seal. Therefore, the first and second of these alleged purposes are irrelevant. The third alleged purpose—that the historical significance of the city's founding outweighs the original religious purpose—is not without merit. The city was in fact a religious experiment and the seal, emblem, and logo recognize that origin. But it is clear that in adopting the Zion seal the Zion legislature sought to identify the City of Zion with the Christian Catholic Church and impart symbolically the values of the church. That purpose was blatantly sectarian at the seal's adoption.

The defendants argue that even if the original purpose of the city in adopting the seal were religious, the current, relevant purpose is historical, and therefore secular. We disagree with respect to the seal and the emblem. The defendants rely on *City of Chicago* for their proposition that "the original purpose of a government's use of a symbol has little if any relevance to an analysis of whether its current use has a secular purpose." Memorandum in Support of Defendants' Motion for Summary Judgment, at 5. However, *City of Chicago* involved a creche that the city erected and dismantled every Christmas season. The Seventh Circuit treated each season's creche display as involving a distinct decision made by the city. *City of Chicago*, 827 F.2d 120, 126 (mayor's 1959 comment "reveals little about the purpose of the 1985–86 display"). In the case before us, one legislative decision on May 6, 1902 adopted the city seal and emblem. The record shows the city has used essentially the identical seal and emblem ever since. We thus find the relevant purpose was not

---

**5.** See, for example, our discussion of the City of Zion's seal below.

**6.** The plaintiffs also challenge an alleged motto of Zion's: "Where God Rules, Man Prospers."

Zion denies having such a motto. To the extent Zion does not and will not use this motto the challenge is moot.

**1250**

secular. To support their contention that the relevant legislative purpose is found much later than in the Minutes accompanying the seal's original adoption, the city points to the Minutes of City Council, May 20, 1986, in which the City Council voted to retain the city seal in its current form for historical reasons. The Minutes do not clearly demonstrate that the Council's vote to retain the seal was motivated purely for historical purposes. In any event, and especially with respect to the later-developed logo, this issue is not dispositive because, as we discuss below, the effect of the seal, emblem, and logo is not secular.

In fact, the effect of the seal, emblem, and logo advances religion and violates the effects prong of the *Lemon* test. Regardless of whether one knows of the religious origin of the City of Zion and can discount the religious effect of the seal accordingly, the seal, emblem, and logo, as we discuss below, are sectarian. We do not impute complete knowledge of history to the average observer of the seal—whether adherent or nonadherent. We therefore cannot assume that the average member of Zion's political community will have either general or specific knowledge of Zion's "unique" history. In fact, the defendants' own expert on the history of the City of Zion, Professor Philip Cook, stated otherwise: "it is possible that the majority of Zion's 15,000 inhabitants know little of its unique history." Affidavit of Philip L. Cook, at 4. We therefore find that the average observer would consider that Zion makes adherence to religion relevant to a person's standing in the political community.

The defendants are not correct when they assert that the symbols in the seal and logo "*merely* recognize Zion's early religious history" (emphasis added). Nothing within the four corners of the seal or the logo detracts from their sectarian messages. The symbols in question are abstract and function as strong symbols of a particular sect of Christianity. As Reverend Dowie indicated, each of the three symbols has an independent religious significance. The sum of the individual symbols imparts a decidedly religious, in fact sectarian, message. The seal, containing the em-

blem, connotes an even stronger message because the symbols appear on a shield below a ribbon that reads "GOD REIGNS." Nothing "neutralizes" the religious message.

The First Amendment declares that "Congress shall make no law respecting an establishment of religion...." The Supreme Court and the Seventh Circuit precedents teach that a municipality may not display religious symbols in a way that endorses religion. We find that the City of Zion's seal, emblem, and logo have the effect of endorsing a Christian message. Nothing more is required to demonstrate a violation of the Establishment Clause. *County of Allegheny*, 109 S.Ct. 3086, 3105. We therefore permanently enjoin the display of the City of Zion's seal, emblem, and logo in their current forms.

## IV. CONCLUSION

We deny the plaintiffs' summary judgment motion in *Kuhn v. Rolling Meadows*. We grant the plaintiffs' summary judgment motion as to the Zion seal, emblem, and logo and deny the defendants' summary judgment motion in *Harris v. City of Zion*. We permanently enjoin the City of Zion from the continued use of its seal, emblem, and logo in their present forms.